# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46229-0-II |
| Respondent, | |
| v. | |
| BENJAMIN A. PETERS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — A jury found Benjamin Peters guilty of (1) second degree robbery and (2) escape from community custody. He appeals his convictions arguing that his trial counsel rendered ineffective assistance by failing to file a motion to sever the charges. Peters also raises several issues in his statement of additional grounds (SAG). We affirm.

## FACTS

### I. ESCAPE FROM COMMUNITY CUSTODY

Following a felony conviction, Peters was under the supervision of the Washington State Department of Corrections (DOC). On January 6, 2014, Peters went to the DOC office to report to his primary community corrections officer (CCO), Donovan Russell, who was responsible for reintegrating Peters back into the community and for making sure Peters followed the conditions of his release. CCO Russell was out of the office that day, so CCO William Corbett instructed

him to return the following day.[1] Peters filed a monthly report of his whereabouts, but did not return to the DOC office. Because Peters had not reported, CCO Russell issued a warrant for Peters on January 10.

## II. SECOND DEGREE ROBBERY

On the night of January 11, 70-year-old Ida Malcom was playing a slot machine at Squaxin Island Tribe's Little Creek Casino. A man in a leather jacket, cap, and yellow shirt sat at the machine next to her. Malcom testified that the man stood up and leaned into her with all his weight. Malcom was unable to push him off of her. The man cashed out Malcom's machine, grabbed the ticket and Malcom's purse, and ran out of the casino.

Squaxin Island Police Officer Tracy Rollins responded to the casino within about two minutes of receiving a report of the incident. Casino video surveillance captured footage of the robbery and of the man running from the building and behind the casino. Hoping to recover the purse, Officer Rollins went behind the casino. There, she found Peters holding a jacket, cap, and yellow shirt. Officer Rollins testified that it was "pretty chilly" that night. Verbatim Report of Proceedings (VRP) at 117. Nonetheless, other than the clothes in his hand, Peters wore only jeans and an undershirt. Peters fled when Officer Rollins told Peters to put his hands in the air. Officer Rollins pursued Peters and eventually Peters was apprehended and placed under arrest.

Deputy Bradley Trout of the Mason County Sheriff's Office responded to Officer Rollins's request for assistance and took over the investigation. Deputy Trout advised Peters of

---

[1] CCO Russell testified that CCO Corbett had the authority to make decisions on CCO Russell's behalf.

No. 46229-0-II

his *Miranda*[2] rights. Peters stated that he understood his rights and agreed to speak with Deputy Trout. When asked where the purse could be found, Peters responded, "If I tell you where it is will you drop all my charges?" VRP at 123. Peters then said, "[I]f I tell you where it's at then what's in it for me?" VRP at 123. Officials never recovered the purse.

### III. PROCEDURAL HISTORY

The State's original information charged Peters with a single count of second degree robbery.[3] At a pretrial management hearing the court reviewed the consolidated omnibus order and noted "holdback charges" including one count of escape from community custody.[4] VRP at 35. Peters's counsel commented, "I think the escape from community custody would have to be charged as a separate case. I don't think those facts and these overlap." VRP at 36. The court urged Peters to make any motion on this issue "expeditiously." VRP at 36. No motion to sever was filed.

On the day of trial, the State filed an amended information adding one count of escape from community custody. Peters's new trial counsel[5] did not object to the filing, did not make a motion to sever the charges, and entered a not guilty plea.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86. S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] RCW 9A.56.190; RCW 9A.56.210.

[4] RCW 72.09.310.

[5] Peters's original court appointed trial counsel withdrew prior to trial citing conflict of interest. The court then appointed a different attorney to represent Peters throughout the remainder of the case.

3

At trial, the State sought to call CCO Corbett to testify as to his interaction with Peters on January 6. Apparently CCO Corbett was not listed as a potential witness for the State during discovery. Outside the presence of the jury, the parties agreed that calling CCO Corbett as a witness would not prejudice Peters given the narrow scope of CCO Corbett's anticipated testimony and the fact that Peters would have the opportunity to talk to CCO Corbett before he testified. Prior to calling CCO Corbett to testify, the court conducted an additional panel voir dire colloquy to ensure none of the jurors had any connection to CCO Corbett. CCO Corbett testified that on January 6, 2014, he instructed Peters to report to the office the following day because CCO Russell was out of the office.

The jury found Peters guilty of both charges.

ANALYSIS

Peters argues his trial counsel rendered ineffective assistance by failing to file a motion to sever the escape from community custody charge from the second degree robbery charge. We disagree.

To show ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance, Peters must show that defense counsel's performance fell below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. To show prejudice, Peters must show a reasonable probability that, but for counsel's purportedly deficient conduct, the outcome

4

of the trial would have differed. 153 Wn.2d at 130. If Peters fails to establish either prong of the ineffective assistance of counsel test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Because ineffective assistance of counsel claims present mixed questions of law and fact, we review them de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

"The threshold for the deficient performance prong is high, given the deference afforded to [the] decisions of defense counsel in the course of representation." *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To show deficient performance, the petitioner must show the absence of any conceivable legitimate tactic supporting counsel's action. *Grier*, 171 Wn.2d at 33. If defense counsel's actions go to the theory of the case, we will not find ineffective assistance of counsel. 171 Wn.2d at 33.

Here, Peters's trial counsel made the tactical decision to use the escape from community custody charge as part of his defense against the second degree robbery charge. "When counsel's conduct can be categorized as legitimate trial strategy or tactics, performance is not deficient." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Peters argued identity as his defense theory to the robbery charge. In his closing argument, Peters explained he only ran from Officer Rollins when she found him behind the casino because Peters knew he had a warrant out for his arrest, not because he had stolen the woman's purse. Generally, legitimate trial strategy cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Carson*, 179 Wn. App. 961, 976, 320 P.3d 185 (2014). Keeping the charges joined was a legitimate trial tactic employed to mitigate circumstantial evidence from which the jury could

infer guilt. Consequently, we hold that trial counsel's performance did not fall below an objectively reasonable standard and as such Peters's claim for ineffective assistance of counsel fails.

## STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Peters raises several additional arguments challenging his conviction. A SAG must adequately inform the court of the nature and occurrence of alleged errors. *State v. Calvin*, 176 Wn. App. 1, 26, 302 P.3d 509 (2013). Issues involving facts outside of the record are properly raised in a personal restraint petition, rather than a SAG. *Calvin*, 176 Wn. App. at 26-27. We are "not obligated to search the record in support of claims made in a [SAG]." RAP 10.10(c).

### I. IMPROPER AMENDMENT OF INFORMATION

Peters claims the State denied him his right to a fair trial by improperly amending the information on the day of trial to include the escape from community custody charge. He also claims the State committed prosecutorial misconduct by amending the information, and that his trial counsel rendered ineffective assistance by not requesting a trial continuance after the amended information was filed. We hold that the amended information was proper and Peters's claims are meritless.

A. *Right to a Fair Trial*

Amendment of a charging document is governed by CrR 2.1(d), which provides "[t]he court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." The defendant bears the

burden of demonstrating prejudice. *State v. Emery*, 161 Wn. App. 172, 201, 253 P.3d 413 (2011). A trial court's ruling on a proposed amendment to an information is reviewed for abuse of discretion. *State v. Ziegler*, 138 Wn App. 804, 808, 158 P.3d 647 (2007).

Peters alleges the amended information prejudiced him by denying him a fair trial. This broad allegation insufficiently demonstrates prejudice. On the contrary, the record shows that Peters was given notice at the pretrial management hearing that the escape from community custody charge would possibly be added to an amended information. Additionally, the State served a copy of the amended information on Peters and his trial counsel before trial. Peters fails to assert how the amended information prejudiced him in any way, and given the advanced notice of the amendment, we reject Peters's claim.

B.      *Prosecutorial Misconduct*

Peters also claims the State committed prosecutorial misconduct by filing the amended information. Prosecutorial misconduct is grounds for reversal if the prosecuting attorney's conduct was both improper and prejudicial. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Absent a timely objection, reversal is required only if the conduct is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury. *State v. Warren*, 165 Wn.2d 17, 43, 195 P.3d 940 (2008).

Peters does not say, nor does the record show, how the State's conduct was flagrant or ill-intentioned. In fact, the record shows that the State took affirmative steps to give Peters notice of the amended information. We reject his claim.

7

C.      *Ineffective Assistance of Counsel*

Peters also claims his trial counsel rendered ineffective assistance by failing to request a continuance following the filing of the amended information. To show ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *Reichenbach*, 153 Wn.2d at 130. Peters has not met his burden to show that he was prejudiced by the amended information. Nor has he shown deficient performance as nothing in the record suggests that counsel needed additional time to investigate with regard to the amended information. As discussed above, the State adequately gave Peters notice that the escape from community custody charge would be added. We reject Peters's claim.

## II. SURPRISE WITNESS

A.      *Right to Due Process*

Peters claims the trial court erred by allowing CCO Corbett to testify even though he was not on the State's witness list. CrR 4.7(a)(1)(i) requires the prosecuting attorney to disclose to the defendant, no later than the omnibus hearing, "the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial." CrR 4.7 is designed to protect both parties from surprise. *State v. Coe*, 101 Wn.2d 772, 783, 684 P.2d 668 (1984). Compliance with this requirement is not mandatory and in order to constitute grounds for reversal, such failure to comply must result in either an abuse of discretion by the trial court or some substantial injury to the defendant. *State v. Jones*, 70 Wn.2d 591, 595-96, 424 P.2d 665 (1967). Where the defendant fails to ask for a continuance, there is presumed to be a lack of

surprise and prejudice. *State v. Schaffer*, 63 Wn. App. 761, 767, 822 P.2d 292 (1991). The State's late disclosure of CCO Corbett as a witness did not mislead or surprise Peters. Peters did not object to the late disclosure at trial but, rather, stated his belief that CCO Corbett's testimony posed no risk of prejudice. Peters knew the content of CCO Corbett's testimony. The trial court did not abuse its discretion in allowing the late disclosure and Peters was not unduly prejudiced as a result. We reject Peters's claim.

B. *Prosecutorial Misconduct*

Peters also claims the late disclosure of CCO Corbett as a witness constituted prosecutorial misconduct. A defendant alleging prosecutorial misconduct bears the burden of showing both improper conduct and prejudicial effect. *Monday*, 171 Wn.2d at 675. As discussed more fully above, the late disclosure of CCO Corbett as a witness did not prejudice Peters. Thus, Peters fails to meet his burden in establishing prosecutorial misconduct and we reject his claim.

C. *Ineffective Assistance of Counsel*

Likewise, Peters's claim that trial counsel rendered ineffective assistance by not opposing CCO Corbett being called as a witness or requesting a continuance fails for lack of prejudice. In order to establish actual prejudice here, Peters must show that the trial court likely would have granted a motion to suppress CCO Corbett's testimony. *See State v. Higgs*, 177 Wn. App. 414, 425, 311 P.3d 1266 (2013), *review denied*, 179 Wn.2d 1024 (2014). Here, Peters fails to show that CCO Corbett's testimony was inadmissible. As previously noted, the trial court has discretion to permit the State to endorse the name of an additional witness during trial, where no

9

undue prejudice will result to the defendant. *Jones*, 70 Wn.2d at 595-96. The record reflects neither that counsel needed additional time to prepare for CCO Corbett's testimony, nor that CCO Corbett's testimony represented any kind of unfair surprise. In fact, during argument outside the presence of the jury the State and defense counsel agreed that because CCO Corbett would only be testifying to the fact that on January 6 he told Peters to report the following day, and because defense counsel would have sufficient opportunity to talk to CCO Corbett prior to him taking the stand, there would be no prejudice to Peters. We reject Peters's claim.

### III. WITNESS IN COURTROOM

A.      *Right to a Fair Trial*

Peters claims the trial court denied his right to a fair trial when it allowed Deputy Trout in the courtroom during Officer Rollins's testimony before Deputy Trout testified. Deputy Trout's arrival or presence in the courtroom other than during his testimony does not appear in the record. Issues involving facts outside of the record are properly raised in a personal restraint petition, rather than a SAG. *Calvin*, 176 Wn. App. at 26. Because this claim involves facts outside of the record we do not consider it.

B.      *Ineffective Assistance of Counsel*

Peters also claims trial counsel rendered ineffective assistance by not objecting to Deputy Trout's presence in the courtroom. "When an ineffective assistance claim is raised on appeal, the reviewing court may consider only facts within the record." *Grier*, 171 Wn.2d at 29. Under *Grier*, therefore, we have no basis for evaluating the ineffective assistance of counsel claim, and

because the alleged flaw is not apparent in the record, we do not consider it. 171 Wn.2d at 29; *see also* RAP 2.5.

### IV. FAILURE TO REQUEST A *KNAPSTAD*[6] MOTION

Peters also claims trial counsel rendered ineffective assistance of counsel by failing to file a *Knapstad* motion.[7,8] Peters cannot prove that counsel's failure to file a *Knapstad* motion prejudiced him.

To prevail on a *Knapstad* motion, the defendant must show that there are no material facts in dispute and that the undisputed facts do not establish a prima facie case of guilt for the crimes charged. 107 Wn.2d at 356. A trial court may dismiss a criminal charge under *Knapstad* if the State's pleadings and evidence fail to establish prima facie proof of all elements of the charged crime. *State v. Sullivan*, 143 Wn.2d 162, 171 n. 32, 19 P.3d 1012 (2001).

Here, the State presented sufficient evidence to support Peters's convictions of second degree robbery and escape from community custody. Thus, a *Knapstad* motion would not likely have been granted, and therefore Peters's ineffective assistance claim fails on this ground as well.

---

[6] *State v. Knapstad*, 107 Wn.2d 346, 351-53, 729 P.2d 48 (1986) (trial court has inherent power to dismiss a case not supported by sufficient evidence).

[7] Peters's claims "[m]y attorney was deficient, because there was no strategic reason why council [sic] did not file a[n] evidentiary hearing and/or Knapstad motion for lack of evidence against me." SAG at 5.

[8] The procedure to be followed for *Knapstad* motions is delineated by CrR 8.3(c).

No. 46229-0-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the
Washington Appellate Reports, but will be filed for public record in accordance with RCW
2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Melnick, J.

Sutton, J.